Matter of Paige v Paige (2022 NY Slip Op 00866)





Matter of Paige v Paige


2022 NY Slip Op 00866


Decided on February 9, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 9, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
VALERIE BRATHWAITE NELSON
REINALDO E. RIVERA
SYLVIA O. HINDS-RADIX
PAUL WOOTEN, JJ.


2021-00454
 (Docket No. V-17923-17)

[*1]In the Matter of Kareem Paige, respondent,
v
Jeanien Paige, appellant.


Salvatore C. Adamo, New York, NY, for appellant.
Christian P. Myrill, Jamaica, NY, for respondent.
Janet E. Sabel, New York, NY (Dawne A. Mitchell and Riti P. Singh), attorney for the child.



DECISION & ORDER
In a custody proceeding pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Queens County (Joan L. Piccirillo, J.), dated December 22, 2020. The order, insofar as appealed from, after a hearing, granted the father's petition to modify an order of the same court dated April 18, 2018, awarding the mother sole legal and physical custody of the subject child, so as to award the father sole legal and physical custody of the child.
ORDERED that the order dated December 22, 2020, is reversed insofar as appealed from, on the facts and in the exercise of discretion, and the father's petition to modify the order dated April 18, 2018, so as to award him sole legal and physical custody of the subject child is denied.
The father and the mother are the married parents of the subject child, who was born in April 2013. The parties lived together until March 2016, when the father moved out of the home, and the child continued to live with the mother. In an order dated April 18, 2018, the Family Court awarded sole legal and physical custody of the child to the mother. In June 2018, the New York City Administration for Children's Services (hereinafter ACS) filed neglect petitions against the mother and nonparty Calique E. (hereinafter Calique), the father of another child of the mother, alleging, inter alia, that they had misused marijuana. In August 2018, the subject child was temporarily released to the father's care during the neglect proceeding.
In November 2018, the father filed the instant petition pursuant to Family Court Act article 6 to modify the April 18, 2018 order so as to award him sole legal and physical custody of the child, alleging that the commencement of the neglect proceeding constituted a change of circumstances since the entry of that order. In an order dated December 22, 2020, made after a hearing, the Family Court granted the father's petition to modify the April 18, 2018 order so as to award him sole legal and physical custody of the child. The mother appeals.
"An order of custody or parental access may be modified only upon a showing that there has been a subsequent change of circumstances such that modification is required to protect the best interests of the child" (Matter of Georgiou-Ely v Ely, 181 AD3d 885, 885; see Matter of [*2]Deondre R. [Annabel R.], 189 AD3d 1252). The best interests of the child are determined by a review of the totality of the circumstances (see Eschbach v Eschbach, 56 NY2d 167; Matter of Georgiou-Ely v Ely, 181 AD3d at 885). "'Since weighing the factors relevant to any custody determination requires an evaluation of the credibility and sincerity of the parties involved, the hearing court's findings are accorded deference'" (Matter of Vargas v Gutierrez, 155 AD3d 751, 753, quoting Matter of Jackson v Coleman, 94 AD3d 762, 763). Nevertheless, "this Court's authority in custody determinations is as broad as that of the hearing court, and while we are mindful that the hearing court has an advantage in being able to observe the demeanor and assess the credibility of witnesses, the hearing court's determination will not be affirmed if it lacks a sound and substantial basis in the record" (Matter of Follini v Currie, 176 AD3d 1203, 1205 [citation omitted]; see Matter of Nevarez v Pina, 154 AD3d 854, 855; Matter of Caruso v Cruz, 114 AD3d 769, 772).
Here, the Family Court's determination that there was a change of circumstances since the issuance of the prior custody order such that an award of sole legal and physical custody to the father was required to protect the best interests of the child lacks a sound and substantial basis in the record (see Matter of Lopez v Chasquetti, 148 AD3d 1151, 1153-1154; Matter of Caruso v Cruz, 114 AD3d at 773; Matter of Sidorowicz v Sidorowicz, 101 AD3d 737, 738). Although in August 2018 the child was removed from the mother's care during the neglect proceeding, in March 2020 an attorney representing ACS submitted into evidence at the hearing a progress report of ACS's supervision of the mother, which indicated that she had successfully completed all required services in connection with the neglect proceeding, including substance abuse counseling, that visits to the mother's home revealed "no concerns or issues," and that the mother "display[ed] a positive and a nurturing relationship" with the child. The attorney stated that ACS had no objections to the mother having sole custody of the child. ACS's attorney also submitted into evidence at the hearing a report prepared by Heartshare, which also had conducted visits to the mother's home. The report indicated that Heartshare's caseworker had "never observed [the mother] to appear under the influence of any substances or seen any evidence of substances in the [mother's] home." Further, no testimony was elicited at the hearing that the mother continued to misuse marijuana or any other illegal substances, or which called into question the mother's ability to care for the child (see Matter of Lopez v Noreiga, 182 AD3d 551, 553). Indeed, at the conclusion of the hearing the court found that "[t]he child is well cared for by her Father and Mother" (emphasis added), and that "both parents are capable of meeting the child's educational needs." While the record demonstrates that the child is well cared for by the father and that, as noted by our dissenting colleagues, the father "fosters a safe and stable environment for the child," the father's ability to care for the child was insufficient to establish a change of circumstances "such that modification is required to protect the best interests of the child" (Matter of Georgiou-Ely v Ely, 181 AD3d at 885).
To the extent the Family Court expressed concern that the presence of Calique, the father of another child of the mother, "makes [the mother's home] less stable," the court's finding has no basis in the record. The mother's testimony was uncontested that she had ended her relationship with Calique, who had never even been to her current residence, and that she had not had any further contact with Calique after an incident in which she called the police and Calique was arrested. Indeed, the court acknowledged in the order on appeal that, after the incident, the mother "took all necessary and appropriate steps . . . by calling law enforcement," and failed to explain why the mother should be deprived of custody based upon her past relationship with an individual with whom she had broken off contact.
The Family Court also placed undue weight on an alleged suicide attempt by the mother in 2013, which predated the award of sole legal and residential custody to the mother in 2018 by several years, and thus, could not constitute a "change of circumstances since the [prior] custody determination" (Matter of Lopez v Chasquetti, 148 AD3d at 1153). Further, while the court speculated in the order on appeal that the mother suffers from "on going [sic] emotional conditions," no testimony or evidence was presented at the hearing showing that the mother suffered from any mental condition, let alone one that would impede her ability to care for the child. To the contrary, the mother testified at the hearing that, although she previously experienced anxiety, she was not continuing to suffer from anxiety at the time of the hearing. This testimony was not contested by the father.
Furthermore, the Family Court failed to afford sufficient weight to conduct by the father which militated against awarding him sole custody. In particular, the mother testified that the father did not allow her to speak to the child by phone, Facetime, or other means while the child was at the father's home. The court did not find that testimony lacking in credibility, noting in its order that "[i]t is unclear . . . why the child does not communicate with her Mother while in the Father's care," and presumed "[t]hat can be remedied by court order." In contrast, the father did not testify that he had any difficulties contacting the child whenever the child was staying with the mother. Moreover, the father acknowledged that he did not add the mother to the child's "blue card" at school for emergency contact information, despite the mother's repeated requests for him to do so. Indeed, the court found that the father "was not forthcoming on this issue." The father also acknowledged that he neglected to advise the mother of which school he had selected for the child to attend during the 2018-2019 school year.
While not determinative, we also note that the Family Court's determination to award sole legal and physical custody to the father was contrary to the wishes of the child to reside with the mother and the child's half-siblings who lived in the mother's home. "[T]he judicial preference of keeping siblings together, where possible, in order to encourage close familial relationships, is firmly established" (Mohen v Mohen, 53 AD3d 471, 475; see Eschbach v Eschbach, 56 NY2d at 173; Matter of Kadi W. v ACS-Kings, 167 AD3d 757, 758). Whereas the child has no siblings or half-siblings living in the father's home, the child has two half-siblings living in the mother's home.
Consequently, the father failed to make a showing that there had been a change of circumstances since the issuance of the April 18, 2018 order such that awarding him sole legal and physical custody was necessary to ensure the child's best interests. Viewing the totality of the circumstances, the best interests of the child would be served by maintaining the award of sole legal and physical custody to the mother. Accordingly, the Family Court improvidently exercised its discretion in granting the father's petition to modify the April 18, 2018 order so as to award him sole legal and physical custody of the child.
BRATHWAITE NELSON, HINDS-RADIX and WOOTEN, JJ., concur.
RIVERA, J., dissents, and votes to affirm the order dated December 22, 2020, insofar as appealed from, with the following memorandum, with which DILLON, J.P., concurs:
I respectfully disagree with the conclusion reached by my colleagues in the majority to reverse the order insofar as appealed from. In my view, the Family Court's determination that the best interests of the child would be served by awarding the father sole legal and physical custody of the child, with liberal parental access to the mother, has a sound and substantial basis in the record and should not be disturbed.
The parties are the parents of the subject child, born in April 2013. In an order dated April 18, 2018, the mother was awarded sole legal and physical custody of the child. On May 23, 2018, the mother gave birth to another child, who is not at issue on the instant matter, whose meconium tested positive for marijuana. On June 5, 2018, the New York City Administration for Children's Services (hereinafter ACS) filed neglect petitions against the mother and her former boyfriend, alleging that they failed to provide proper supervision by misusing marijuana and not participating in a rehabilitative program. Further, that petition alleged that the mother failed to provide proper supervision in that she suffered from a mental condition, which included a previous suicide attempt resulting in hospitalization. The subject child was removed from the mother's care during the neglect proceeding. The neglect proceeding resulted in the entry of a neglect finding against the mother. The child has lived with the father since August 2018.
On November 26, 2018, the father filed a petition to modify the April 18, 2018 order so as to award him sole legal and physical custody of the parties' child. Following a hearing, the Family Court issued the order which is the subject of this appeal, a 42-page document, wherein the court thoroughly explained its determination to grant the father's petition. The court concluded, inter alia, that the father's home was more stable. It noted that the mother failed to "candidly answer" certain questions asked of her, and found that the mother was not clear about her mental health [*3]diagnosis and whether she should be receiving any services to manage her mental health needs. Further, the court expressed concerns regarding the ongoing conduct of the mother's former boyfriend, with whom the mother has a child. Specifically, at the hearing, the mother testified that, as recently as 2020, there was an incident involving that former boyfriend, where he possessed an illegal firearm, prompting the mother to report the matter to the police.
In order to modify an existing custody order, there must be a showing that there has been a change of circumstances, such that modification is required to protect the best interests of the child (see Matter of Jackson v Shands, 191 AD3d 675; Matter of Vitucci v Radparvar, 173 AD3d 1191, 1192). The best interests of the child must be determined by a review of the totality of the circumstances (see Eschbach v Eschbach, 56 NY2d 167, 171-172).
Since weighing the factors relevant to any custody determination depends to a great extent upon the hearing court's assessment of the credibility of the witnesses and of the character, temperament, and sincerity of the parties, the hearing court's findings are generally accorded great respect and will not be disturbed unless they lack a sound and substantial basis in the record (see Matter of Schellinger v Dunn, 195 AD3d 1034; Matter of Amendola v Maglione, 189 AD3d 1030, 1031).
Here, the circumstances leading to the finding of neglect against the mother were sufficient to satisfy the threshold showing of a change in circumstances since the issuance of the April 18, 2018 order (see Matter of Deondre R. [Annabel R.], 189 AD3d 1252, 1253-1254; Matter of Elisa N. v Yoav I., 170 AD3d 513, 514). In the order appealed from, the Family Court indicated that "no one has challenged that there has been a change in circumstances."
In addition, contrary to the conclusion of my colleagues in the majority, the Family Court's determination that the child's best interests would be served by awarding sole legal and physical custody to the father has a sound and substantial basis in the record and should not be disturbed. The court made "a careful and studied review" of the relevant factors, which findings should be accorded great deference (Eschbach v Eschbach, 56 NY2d at 174). I will not substitute my judgment for that of the Family Court, as it had the advantage of observing the demeanor and assessing the credibility of the witnesses. The evidence amply showed that the father was better able to promote stability in the child's life and provide for the child's overall well-being. The evidence at the hearing demonstrated that the child, who has lived with the father since 2018, is well-cared for, thriving under the father's care, doing well in school, and current with medical appointments.
I take this opportunity to re-articulate that the paramount consideration in determining custody is the best interests of this child; not a parent's wishes, desires, or preferences. While the mother may have made strides in improving her circumstances, under the totality of the circumstances, as found by the Family Court, the best interests of this child would be served by awarding the father sole legal and physical custody. The father fosters a safe and stable environment for the child.
To the extent that the mother contends that joint custody is a "viable solution," a position also shared by the attorney for the child, joint custody is inappropriate where, as here, the parties are unable to cooperate with each other on matters concerning the child and effectively co-parent (see Matter of Toro v Williams, 167 AD3d 634, 636; Matter of Edwards v Rothschild, 60 AD3d 675).
Accordingly, I vote to affirm the order insofar as appealed from, granting the father's modification petition so as to award him sole legal and physical custody of the child.
ENTER:
Maria T. Fasulo
Clerk of the Court